IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | |
|---|---|
| OUYEINC LTD., <br><br> Plaintiff, <br><br> v. <br><br> Alucy and et al., <br><br> Defendants. | Case No. 20 cv 3490 |

**PLAINTIFF'S MEMORANDUM IN SUPPORT FOR ITS
MOTION TO ALTER OR AMEND JUDGMENT
FROM ORDER ON MAY 14, 2021**

NOW COMES Plaintiff, Ouyeinc Ltd., by and through its attorneys, Barney & Karamanis, LLP, and respectfully moves this Honorable Court to reconsider, amend, and/or alter its Order of May 14, 2021, pursuant to Federal Rule of Civil Procedure 59(e). In support of this Motion, Plaintiff states as follows:

**INTRODUCTION**

On April 9, 2021, Defendants Hailitech and Hlx_tech filed a Motion to set aside the default order entered against them on January 14, 2021. Within this motion, Defendants specifically asked for relief in the form of setting aside the default entry from January 14, 2021 and to grant them leave to answer or otherwise plead to the Plaintiff's Complaint within 28 days. *See* Defendant's Motion to Set Aside Default ("Exhibit A") at p. 6. On April 29, 2021, Defendants Hailitech and Hlx_tech filed their reply brief to Plaintiff's response where they reiterated their request to enter an order setting aside the default judgment and to grant them leave to otherwise plead to the complaint or settle with the plaintiff within 28 days. *See* Defendant's Reply to Plaintiff's Response to Motion to Set Aside Default ("Exhibit B") at p. 5.

1

On May 14, 2021, this Court entered its memorandum opinion & order ruling on Defendant's Motion to Set Aside the Default Order. [Dkt# 134]. This Court denied the motion to set aside on basis of improper service, but granted the motion by reasoning that it lacked personal jurisdiction over the Defendants, Hailitech and Hlx_tech, thereby dismissing them from the suit. [Dkt# 133]. In light of this order, Plaintiff now moves this Court to reconsider its ruling to dismiss these Defendants.  New facts have come to light that definitively show that these Defendants have sufficient minimum contacts within Illinois, and that this Court holds personal jurisdiction over those Defendants.  Plaintiff further believes that this Court's ruling was in error when it did not account for the procedural basis for the Defendants' motion, which only requested to set aside the judgment. Additionally, Plaintiff argues that the Court did not account for all relevant facts surrounding the action. As a result, Plaintiff respectfully requests that this Court amend and/or alter its ruling to dismiss Defendants Hailitech and Hlx_tech from the suit and to reinstate them as defendants to this action pursuant to Rule 59(e).

## STANDARD OF REVIEW

"[U]nder Rule 59(e) the movant must demonstrate a manifest error of law or fact or present newly discovered evidence." *Boyd v. Tornier, Inc.,* 656 F.3d 487, 492 (7th Cir. 2011).

> The purpose of a motion pursuant to Rule 59(e) is to ask the court to reconsider matters "properly encompassed in a decision on the merits." *Osterneck v. Ernst & Whinney,* 489 U.S. 169, 174, 109 S. Ct. 987, 989, 103 L. Ed. 2d 146). A Rule 59(e) motion may be used to bring to the court's attention "a manifest error or law, or newly discovered evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). A motion to reconsider pursuant to Rule 59(e) should be granted only in rare circumstances. *Scott v. Bender*, 948 F. Supp. 2d 859, 865 (N.D. Ill. 2013). A party moving for reconsideration pursuant to Rule 59(e) bears the heavy burden of establishing that the court should reverse its prior judgment. See *Caisse Nationale de Credit Agricole v. CBI Indus.,* 90 F.3d 1264, 1270 (7th Cir. 1996). A Rule 59(e) motion for reconsideration is not an appropriate vehicle for re-litigating arguments that the district court previously rejected, or for arguing issues or presenting evidence that could have been raised

2

during the pendency of the motion presently under reconsideration.

*H.P. ex rel. W.P. v. Naperville Community Unit School District #203,* No. 17 C 5377, 2018 U.S. Dist. LEXIS 76769, at *1-2 (N.D. Ill. May 7, 2018).

When ruling on a motion to dismiss the Court should consider all of the facts asserted in Plaintiff's pleadings as true and any factual determinations should be resolved in its favor. *See Purdue Research Found. v. Sanofi-Sythelabo*, S.A., 338 F.3d 773, 782 (7th Cir. 2003) ("Jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits."). Where no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (citing Fed. R. Civ. P. 4(k)(1)(A)).

Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum related activities. *Tamburo*, 601 F.3d at 702 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The exercise of specific personal jurisdiction must also comport with traditional notions of fair play and substantial justice. *Id*. (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A foreign corporation availing itself of "the benefits of an economic market in the forum State" is sufficient to establish personal jurisdiction "even if it has no physical presence in the State." *Quill Corp. v. North Dakota*, 504 U.S. 298, 307 (1992).

## ARGUMENT

**I.  New Evidence has Been Made Available to the Plaintiff that Proves the Defendants Continuously Sold Products to Illinois Which Directly Rebuts Defendants' Sworn Affidavit.**

Since this Court's order on May 14, 2021, new evidence has been made available to the

3

Plaintiff that shows that Defendants, Hailitech and Hlx_tech, (hereinafter "Defendants") made multiple sales of the infringing product in Illinois. Prior to May 14, 2021, Plaintiff's counsel had been in communication with eBay's counsel to acquire a sales record for the Defendants' infringing products, but had not yet received those records related to the location of the sales. On May 20, 2021, Plaintiff's counsel received the sales record for Defendants Hlx_tech and hailitech for the infringing products that shows six separate sales to addresses in Illinois. *See* Ouyeinc_20-cv-3490_Buyer location_items122440658249 and 252379170771 ("Exhibit C")[1]. This pattern of sales dating back to as early as April 30, 2017, is enough to establish continuous contact with Illinois and for this Court to find personal jurisdiction over the Defendants in this case.

This new evidence also invites questions as to the reliability of the sworn affidavit presented by the Defendants in their original motion. The sworn affidavit of Changxi Hu stated that Defendants "never sold any alleged counterfeit products in Illinois." *See* Exhibit A at p. 8. This new evidence directly rebuts Mr. Hu's statement. At the very least, this new evidence calls into question the veracity of the rest of the statements in this affidavit.

**II.     The Court's Previous Ruling that the Defendants had not Established Enough Contacts with the Forum State Presents Clear Error with Application of the Cited Cases and New Evidence Establishes that This Court Holds Personal Jurisdiction over the Defendants.**

The Court's finding of lack of personal jurisdiction over the Defendants is based upon an apparent misunderstanding of the facts of the case relating to Defendants' eBay store and its contacts with Illinois customers. Under the Lanham Act, Defendants' offer for sale of infringing products in Illinois constitutes tortious activity. Furthermore, even a single tortious

---

[1] The exhibit has been saved as a PDF file from its original excel workbook and infringing sales in Illinois have been highlighted in yellow for the Court's convenience..

4

act in Illinois allows the Court to exercise personal jurisdiction over the Defendants. *Dental Arts Lab.*, 2010 U.S. Dist. LEXIS 124029, at *7. The new evidence provided from eBay proves that multiple instances of sales in Illinois have occurred and it is readily apparent that the Defendants have enough continuous contacts within the state to avail themselves to the forum.

One part of the analysis from the Court's memorandum that the Plaintiff believes requires clarification was the finding that *Illinois v. Hemi Group LLC,* 622 F.3d 754 (7th Cir. 2010) was inapposite to the current case because of the difference between third party and independent websites. *See* Dkt# 134, this Court's memorandum and opinion on May 14, 2021 at p. 5. In its opinion, this Court seemed to focus on the independence of a potential infringer's website when the Hemi court's ruling was not limited on such grounds. The principal factor that interested the court in *Hemi* was not whether the websites were independent but whether the websites were "interactive." *Hemi Group LLC,* 622 F.3d at 760; *see, also, Jennings v. AC Hydraulic A/S,* 383 F.3d 546, 549-50 (7th Cir. 2004). The ability to choose to sell goods to the state of Illinois accomplishes the level of "interactivity" that the court in *Hemi* and in *Jennings* required. The court in *Jennings v. AC Hydraulic A/S* is instructive in whether or not a website is interactive or passive. 383 F.3d 546. An interactive website as discussed by *Jennings* may be one "one which consumers can order the defendant's goods or services, may subject a defendant to the exercise of personal jurisdiction." *Id.* at 549. This description of an interactive website is juxtaposed against the definition of a passive one which is described as a website "which merely makes available information about the company and products." *Id.* at 550. The ability for consumers in the state of Illinois to order the Defendants goods and services accomplishes the level of

5

"interactivity" that the court in *Hemi* and in *Jennings* required. In fact, the *Hemi* court's concern that was noted by this Court applied directly to the level of "interactivity" of website and not to the kind of website (3rd party or independent) that this Court believed. 622 F.3d at 760.

The Court also cited to *Hemi* stated that "significant caution is appropriate when assessing a defendant's online contacts . . . to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is **accessible** in a forum state." *Id.* (emphasis added). The operative word in this quotation, "accessible," is in direct reference to a passive website mentioned by Jennings, one which "merely makes available information about the company and products." *Id.; Jennings,* 383 F.3d 546. Neither of the two courts from *Hemi* and *Jennings* placed any emphasis on whether or not the website used was independent or by a third party. The integral part of both court's analysis was that the site's "interactivity" gives the consumer the ability to order goods or services from the Defendants, and they cautioned not to use this analysis against "passive" websites that merely provide information to consumers. The level of interactivity in the Defendants' eBay store is well established; a consumer from Illinois can go to the eBay storefront directly and has the ability to order infringing goods from the Defendants. This is obvious from Defendants' sales in Illinois since 2017. Therefore, the eBay storefront meets the "interactive website" description that was established by both *Jennings* and *Hemi.*

Furthermore, this Court did not account for, or was unaware of, the specific nuances of operating an eBay storefront. Unlike a typical global marketplace, a user's eBay storefront is configured by the user to set up what products to sell, what prices to set, shipping prices, and, most importantly, specific locations where the seller wishes to ship their products. According

to eBay's international selling policy, sellers are required to select the locations of where they wish to sell their products, which includes providing specific shipping options for these locations. *See* eBay international selling policy ("Exhibit E") at p. 2-3. In essence, a store seller on eBay is no different than a standalone website operator, in both cases the sellers set up online storefronts that specifically target Illinois residents. While the specific settings of Defendants' store fronts and exact scope of their customers are unknown, it is clear from Plaintiff's evidence of six separate sales to Illinois residents that Defendants' eBay site is set to deliver products to Illinois, which is enough to find sufficient contacts between Defendants and this State.

Respectfully, the Plaintiff believes that this Court's reliance on *Noboa v. Barceló Corporación Empresarial, S.A.*, No. 13 C 8966, 2015 U.S. Dist. LEXIS 199603 (N.D. Ill. Mar. 26, 2015) may be misplaced as the facts in the case at bar are readily distinguishable from the one at bar. *Noboa* is a case where the plaintiffs used Orbitz to visit the resort of one of the defendant where the plaintiffs later became injured on an excursion through another defendant's company. *Id.* at *3-4. The crucial difference between these two cases is within the activities that were directed towards the forum state. *Noboa's* Defendant invited individuals to book at its Orbtiz website for a hotel well outside the territory of Illinois. *Id.* Meanwhile, the Defendants in this case purposefully held a storefront where Illinois customers bought infringing products, and then packaged and delivered infringing products to Illinois. The Defendants actions in this case are more substantial and place a direct connection between the activities of the Defendants and consumers in Illinois. Meanwhile, the use of Orbitz as a booking site for a destination where the user happened to be injured through the potential tortious actions of defendants unrelated to Orbitz is clearly inapposite to the facts

presented here. Defendants Hlx_tech and hailitech were fully aware that they had made sales to Illinois consumers and were targeting those consumers through the settings of their eBay stores.

The last case used by this Court, *Chenyan v. P'ships & Unincorporated Associations Identified on Schedule "A",* No. 20 cv 00221, 2021 U.S. Dist. LEXIS 86934 (N.D. Ill. May 6, 2021), is also distinguishable from the case at bar and provides support to find personal jurisdiction over the Defendants in the present case. As an initial matter, although the Defendants in *Chenyan* were ultimately dismissed in this action, they were dismissed under a motion to dismiss under Rule 12(b)(2). *Id.* at *1-2. In contrast to the case at bar, the court in *Chenyan* held that the Defendant did not own, operate, or control the eBay stores in question. *Id.* at *13. Moreover, *Chenyan* is easily distinguished from this case as the defendant in *Chenyan* hadn't made a sale in the forum state. *Id.* at *15. In fact, the court in *Chenyan* alludes to the idea that a contact would have been formed with the forum state had a sale taken place. *Id.* (suggesting that a sale or some additional contact was necessary beyond a websites interactivity). In the current case, there has been clear contact with Illinois due to the shipment of infringing products to the forum state, which indicates that Defendants purposefully availed themselves of the jurisdiction and laws of the State of Illinois. *See* Exhibit A, B.

Lastly, the court in *Christian Dior Couture, S.A. v. Liu*, No. 15 C 6324, 2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015) offers the best guidance in how to maneuver personal jurisdiction when it comes to infringing sales on third party websites. This case involved a plaintiff whose products were allegedly being infringed upon by Defendants located in China who were offering their products to customers in the United States from their

8

storefront located on Aliexpress.com, a third-party website. *Id.* at *1-3. The court in *Christian Dior* found that Defendants had directed its activities towards the state of Illinois and purposefully availed themselves to the State by offering to sell an infringing product to an Illinois customer. *Id.* at *6-8 ("By both operating on AliExpress and actually offering to sell a product to an Illinois consumer, Omfeng has intentionally directed its activities at Illinois and purposefully availed itself of the privilege of conducting business in Illinois"). The only evidence needed for a finding of personal jurisdiction was an offer for sale, and an actual sale of the infringing product was unnecessary. *Id.* at *6 ("If Omfeng made efforts to extend offers to Illinois consumers, Omfeng purposefully availed itself of the privilege of conducting business in Illinois, whether or not the deals were finalized."). The nature of Defendants using a third-party storefront in Aliexpress was directly addressed by the *Christian Dior* court:

> It may be a global marketplace as Defendants claim, but they cannot insulate themselves from any harm that they cause simply by locating themselves within the borders of China or any other country outside the United States. Dior has shown that Defendants attempted to sell a product to Illinois consumers and ship at least one product to Illinois. In fairness, Defendants should be required to defend themselves in a court in Illinois.
> 
> *Christian Dior Couture, S.A. v. Liu*, 2015 U.S. Dist. LEXIS 158225 at *6-8

*Christian Dior* is similar to the present matter, since both cases involve trademark infringement from China where the infringer operated a storefront on a third-party website. Here, Defendants not only offered products for sale, but made multiple sales of the infringing product in Illinois unlike in *Dior* where only offers existed. Yet, the *Dior* Court still found enough evidence to establish personal jurisdiction. Under the analysis provided by the Northern District of Illinois in *Christian Dior,* the Defendants' activities in the present case illustrate that they directed their activities toward Illinois and have purposefully availed themselves to the privilege of operating within Illinois through their custom eBay storefronts.

9

Defendants should not be allowed to insulate themselves from this Court simply by locating themselves behind another country's border and selling from a third-party storefront.

The court in *Dior* also acknowledged the issue of Rule 4 of the Federal Rules of Civil Procedure. *Id.* at *13. Rule 4(k)(2) states that for a claim that arises under federal law, serving a summons establishes personal jurisdiction over a defendant if "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and law." USCS Fed Rules Civ Proc R 4(k)(2). *Dior* found that Rule 4 was applicable in that case as such a finding did not upset the notions of fair play and substantial justice. 2015 U.S. Dist. LEXIS 158225 at *14. *Dior* found that because the defendants directly benefited from their actions in the United States (i.e. selling products to United States citizens and profiting from those sales), they should not have been surprised to learn that they were subject to jurisdiction in the United States because of their transactions. *Id*. In the case at bar, Rule 4(k)(2) is also applicable as the Defendants are not subject to general jurisdiction in any other state court and exercising jurisdiction is consistent with the law. Defendants cannot simply continue to benefit from their tortious activity and then be surprised when they are haled into a United States Court. Thus, Rule 4(k)(2) offers another basis for finding personal jurisdiction over the Defendants due to their sales in the United States and in Illinois.

### III. Defendants' Motion was Under Rule 55(c) and not Rule 12(b)(2), and The Proper Remedy was to Set Aside the Default and Vacate for Further Proceedings Regarding Jurisdiction.

If this Court finds that there is still a question of personal jurisdiction that exists, then the appropriate method would have been to allow for additional jurisdictional discovery and/or an evidentiary hearing rather than dismissal. Defendants did not seek relief under Rule

12(b)(2), and Plaintiff was not afforded an opportunity to combat the evidence presented by Defendants.

      Defendants filed their Motion to Set Aside Default Order under Rule 55(c) with a request from the court to set aside the default order entered against them on January 14, 2021. Under Rule 55(c), a party must cite to a meritorious defense to the plaintiff's complaint. USCS Fed Rules Civ Proc R 55(c). While lack of personal jurisdiction was one of the meritorious defenses that Defendants used, Defendants did not assert a motion to dismiss under lack of personal jurisdiction pursuant to Rule 12(b)(2). Defendants also did not request the court to dismiss the action for lack of jurisdiction as a remedy. *See* Exhibit A at p. 6. The principal question argued between the parties and that was before the court was whether or not to vacate the default judgment entered against the Defendants pursuant to their Motion to Set Aside Default Order. However, on May 14, 2021, the Court not only granted the motion to aside the default judgment but also dismissed the Defendants from the suit citing that it found that it lacks personal jurisdiction over the Defendants. [Dkt# 134]. The matter was dismissed without briefing whether personal jurisdiction was proper under Rule 4(k)(2) or without further hearings regarding jurisdiction and without providing Plaintiff an opportunity for discovery against these Defendants.

      Moreover, since the Defendant's motion was not filed pursuant to Rule 12(b)(2) and the Plaintiff was not afforded an opportunity to argue personal jurisdiction with jurisdictional discovery and/or an evidentiary hearing. This dismissal created a procedural issue as Defendant reaped the benefits of the dismissal action and motion to dismiss under Rule 12(b)(2) without having to address the material and disputed facts between the two parties regarding personal jurisdiction. Meanwhile, Plaintiff was unable to defend against the ruling

11

of a dismissal as it was not given the benefit of jurisdictional discovery or an evidentiary hearing as one would typically receive under a dismissal action pursuant to Rule 12(b)(2). Since the court believed that personal jurisdiction was at issue in this case, the proper remedy in this case would have been to set aside the default and vacate for further proceedings regarding jurisdiction as well as to have the parties engage jurisdictional discovery.

Jurisdictional discovery is generally justified when the plaintiff can show that the factual record surrounding personal jurisdiction is at least ambiguous or unclear on a jurisdictional issue. *United Wholesale LLC v. Traffic Jam Events*, 2012 U.S. Dist. LEXIS 76724 at *1-2 (N.D. Ill. June 4, 2012) (*citing Trading Technologies Inter., Inc., v. BCG Partners, Inc.*, 2011 U.S. Dist. LEXIS 33552, at *3 (N.D. Ill. 2011)). Furthermore, in the event where a plaintiff does establish a prima facie case of personal jurisdiction, courts should permit the Plaintiff "to conduct limited discovery to address the issues raised by Defendant's motion to dismiss." *Id.*

The Seventh Circuit's decision in *Central States, Southeast & Southwest Areas Pension Fund v. Phencorp Reinsurance Co.,* 440 F.3d 870, 876-78 (7th Cir. 2006) is instructive in this case as the appellate court reversed the trial court's refusal to grant jurisdictional discovery to the plaintiff since the plaintiff made a prima facie case for personal jurisdiction. The court read the complaint liberally, in its entirety, "with every inference drawn in favor of [the Plaintiff]." *Id.* In *United Wholesale LLC v. Traffic Jam Events*, the Northern District of Illinois found that jurisdictional discovery was appropriate under a very similar fact pattern to the case at bar. 2012 U.S. Dist. LEXIS 76724. In that case, the primary issue was whether it was appropriate to grant jurisdictional discovery in light of a pending motion to dismiss under Rule 12(b)(2). *Id.* at *1-3. The heart of the controversy was that the defendant in that case was mass mailing

12

advertising pieces to consumers. *Id.* at *6-7. The court concluded jurisdictional discovery was proper in order to shed light on if Defendant had directed its activities to consumers in Illinois. *Id.* Here, the ruling of jurisdictional discovery was and is also proper, as there is a question before the court as to if Defendant directed its activities towards consumers in Illinois and Defendants made appropriate contacts with Illinois to exercise personal jurisdiction. Furthermore, the benefit to allowing jurisdictional discovery in this case is apparent in this case as the new evidence provided by eBay's counsel is the exact kind of discovery that is contemplated by an order for jurisdictional discovery. If this Court is not willing to reconsider its previous dismissal, the eBay sales list proves that jurisdictional discovery is the proper remedy in this case instead of dismissal.

Under a motion pursuant to Rule 12(b)(2) there would not be a finding for lack of personal jurisdiction without additional discovery as there was a clear factual dispute and conflict between the parties. When there is a ruling for dismissal under a Rule 12(b)(2) motion without an evidentiary hearing that is based entirely upon written submissions from both parties, the plaintiff needs only to establish a prima facie case for personal jurisdiction. *BIC Corp. v. Chicago Import, Inc.*, No. 18-cv-7378, 2021 U.S. Dist. LEXIS 95109 *9 (N.D. Ill. May 19, 2021) (*citing GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009)). Here, the Plaintiff in their brief presented clear evidence of at least one sale of the offending products in Illinois. *See* Plaintiff's Response to Motion to Set Aside at Exhibit E (attached hereto as "Exhibit D"). It is immaterial whether or not Defendant proffered their affidavit to dispute this fact, as the Seventh Circuit has previously found that confirmation of a sold, infringing product is enough to establish a prima facie showing of personal jurisdiction. *See Bullar v. Archway Skydiving Ctr., Inc.,* No. 11-cv-0468-MJR-PMF,

2013 U.S. Dist. LEXIS 191874 at *13-15 (S.D. Ill. May 16, 2013) (Ruling that an email from a third party that confirms that the product was sold in that state is enough to establish a prima facie showing of personal jurisdiction). However, in cases where the Defendant shows a sworn statement that goes against the Plaintiff's evidence, the Seventh Circuit has held that this creates a factual dispute between the parties and has concluded that an evidentiary hearing and engagement of jurisdictional discovery is necessary to generate further evidence of contacts within the forum state. *Id.* At *15. The case at bar is factually very similar to situation in *Bullar v. Archway Skydiving Ctr., Inc.,* as the Defendants hold a sworn affidavit which holds, at the very least, a careless misrepresentation that it has not sold any items in the state of Illinois. Exhibit A at p. 6. Meanwhile, Plaintiff presents evidence that at least 6 sales occurred in Illinois. *See* Exhibit C. Even prior to obtaining the new evidence, Plaintiff held proof that at least one sale had occurred in the state of Illinois. *See* Exhibit D. It follows that Plaintiff presented a prima facie case in its original response for personal jurisdiction or, at minimum, that a factual dispute existed regarding personal jurisdiction. Under the cases stated above, had this been a motion under Rule 12(b)(2), this prima facie evidence would result in either additional discovery or an evidentiary hearing rather than an outright dismissal.

## CONCLUSION

For the aforementioned reasons and argument, Plaintiff respectfully requests that this Honorable Court reconsider its May 14, 2021, ruling, and to revise that order to reinstate the Defendants Hailitech and Hlx_tech, find that this Court has personal jurisdiction over Defendants, or in the alternative permit jurisdictional discovery, evidentiary hearings, or grant other relief for Plaintiff as this Court deems just and proper.

Respectfully submitted,

/s/ Kenneth A. Nazarian
James A. Karamanis (Atty No. 6203479)
Kenneth A. Nazarian (Atty No. 6309765)
Trevor R. Jenkins (Atty No. 6329867)
Barney & Karamanis, LLP
180 N. Stetson, Ste 3050
Chicago, IL 60601
Tel.: 312/553-5300
James@bkchicagolaw.com
ken@bkchicagolaw.com
trevor@bkchicagolaw.com

*ATTORNEY FOR PLAINTIFF Ouyeinc Ltd.*