**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OUYEINC, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:20-cv-3490 |
| v. | ) | |
| | ) | Judge Hon. Robert W. Gettleman |
| ALUCY, et al., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MOTION TO SET ASIDE DEFAULT JUDGMENT</u>

COME NOW Defendants TOMORROWHOME, OUTLETESTORE, SEACOOLR, ANDERLINK, BESTGEEKER, FANSFUNY, NATIVISH, ROWACTION, and USBKITS ("Defendants" or "Storefronts"), by and through their attorneys, Hinshaw & Culbertson LLP, and in support of their Motion to Set Aside Default Judgment and submit the following:

| Number (As Referred To in Schedule A to the Amended Complaint) | Store Name |
|---|---|
| 482 | Tomorrowhome |
| 395 | Outletestore |
| 435 | Seacoolr |
| 115 | Anderlink |
| 134 | Bestgeeker |
| 230 | Fansfuny |
| 384 | Nativsh |
| 428 | Rowaction |
| 503 | Usbkits |

The Storefronts have each retained the undersigned counsel to appear on their individual behalves. Rather than burden the Court with nine separate motions, Counsel has filed a single motion because the facts are so similar between the respective Storefronts.

## INTRODUCTION

This is a trademark infringement case filed by a Hong Kong owned company[1] under cover of darkness against hundreds of alleged infringers, including Storefronts. Despite Plaintiff Ouyeinc, Ltd. ("Ouyeinc" or "Plaintiff") failing to provide any evidence of alleged infringement, the Court entered a default judgment in this case against each of the Storefronts. The default order was based in significant part on Plaintiff's representations that it had properly served Defendants with the Summons and Complaint and the Motion for Entry of a Default Judgment. Unfortunately, this is not the case. At least five of the Defendants (Tomorrowhome, Outletestore, Seacoolr, Anderlink and Bestgeeker) received <u>no</u> notice of these proceedings or the Motion For Entry of Default Judgment ("Default Motion"). *See* Exs. A ¶ 7, B ¶ 7, C ¶ 7, D ¶ 7 and E ¶ 7. As to the remaining Defendants, due to language barriers, the urgency of the English language emails received from Plaintiff were not recognized immediately, and Defendants did not realize a lawsuit had been filed against their respective Storefront until after their financial accounts were restrained. *See* Exs. F ¶ 8, G ¶ 8, H ¶ 8 and I ¶ 8. Although they would have received the Summons and Complaint and Motion for Entry of a Default Judgment, they were not aware of the proceedings. *See* Exs. F ¶ 7, G ¶ 7, H ¶ 7 and I ¶ 7. This is a simple mistake, inadvertence, surprise or excusable neglect.

Thus, the failure to timely respond to the Complaint and the Motion for Default was due to either not receiving any notice of the proceedings or to mistake, inadvertence, surprise or excusable

---

[1] Although Plaintiff failed to file a corporate disclosure statement, Colorado state records indicate Plaintiff Ouyeinc, Ltd. was sold to WO Cole Electrical (HK) Technology Limited on June 21, 2019, a year before this case was filed. *See* Ex. K-N and Declaration of Mark K. Suri, Ex. R ¶ 6-9. WO Cole Electrical (HK) Technology Limited was only created under the laws of Hong Kong on May 6, 2019, just weeks before the sale. It is believed that WO Cole Electrical (HK) Technology Limited is owned by a Chinese company, Shenzhen OuYe E-Commerce Co., Ltd., located in the city of Shenzhen, Guangdong, China, as the three entities share managers and ownership of intellectual property. *Id*. Colorado corporate records show plaintiff is no longer in good standing, but is delinquent. Ex. R ¶ 10 and Ex. T.

neglect for each of the Storefronts. Since being made aware of this action, each of the Storefronts took quick action to respond to and seek to set aside the default. In addition, they have meritorious defenses to Plaintiff's claims that they should be allowed to present. For example, Storefronts can show that the Court lacks jurisdiction over them. Further, Plaintiff has failed to provide any evidence of any alleged infringement by each of the Storefronts to the Court. Finally, email service on Defendants was improper under the Hague Convention, thus making jurisdiction improper.

## LEGAL STANDARD

Fed. R. Civ. P. 60(b) states, in part, that the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect; or

* * *

(6) any other reason that justifies relief.

Whether or not to vacate a default is in the sound discretion of the district court, and a reviewing court should reverse such a determination if the district court abused its discretion. *Yong-Qian Sun v. Bd. of Trs.*, 473 F.3d 799, 810 (7th Cir. 2007). The Seventh Circuit has established that a district court, in using its discretion, should be mindful of the Seventh Circuit's policy that favors the resolution on the merits of a case by trial rather than through a default. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 631 (7th Cir. 2009).

A motion under Rule 60(b) (1)-(3) must be filed within a reasonable time, but in any event, no more than one year after entry of a final order. Fed. R. Civ. Proc. 60(c).

## ARGUMENT

I.     **THE DEFAULT JUDGMENT SHOULD BE SET ASIDE BECAUSE STOREFRONTS CAN SHOW THAT THEY MEET THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 60(b).**

Plaintiff filed its complaint in this case[2] on June 15, 2020. Dkt. 1. Plaintiff then filed an Amended Complaint, motion for an *ex parte* Temporary Restraining Order, Motion for Expedited Discovery, Motion for Alternative Service and Motion to Seal, each of the foregoing on June 16, 2020. (Dkt. 6-9.) The Court granted Plaintiff's motions on June 17, 2020. (Dkt. 11, 12.) The temporary restraining order was extended on June 30, 2020, July 13, 2020 and July 29, 2020. (Dkt. 14, 18, 36.) Plaintiff filed a Motion for Preliminary Injunction, which was granted by the Court on August 4, 2020. (Dkt. 34, 42.) Plaintiff filed its applicable Default Motion on November 18, 2020. (Dkt. 87, 87-1.) The Court granted the Default Motion by its entry of a Minute Order on November 24, 2020 and a Final Judgement Order on January 14, 2021. (Dkt. 98, 105.) Defendant's PayPal accounts were seized and/or frozen in early February 2021. *See* Exs. D ¶ 8, E ¶ 8, F ¶ 8, G ¶ 8, H ¶ 8 and I ¶ 8.

    A.     **Tomorrowhome, Outletestore, Seacoolr, Anderlink and Bestgeeker Did Not Receive Any Notice Of The Summons And Complaint.**

Plaintiff failed to serve Tomorrowhome, Outletestore, Seacoolr, Anderlink and Bestgeeker with the Summons and Complaint and Default Motion. *See* Exs. A ¶ 7, B ¶ 7, C ¶ 7, D ¶ 7 and E ¶ 7. These Storefronts did not receive any notice that Plaintiff filed suit against them. *Id*. Although

---

[2] Plaintiff filed three other trademark infringement cases and a design patent case at about the same time in this District. 20-cv-3488, 20-cv-3491, 20-cv-3492, 20-cv-3591. Judge Tharp *sua sponte* dismissed the design patent case on the grounds that he suspected Plaintiff of forum shopping. 20-cv-3492, Dkt. 10 ("No defendants were named in the complaint 1 at the time it was filed; Schedule A 6, purportedly attached to the complaint, did not in fact accompany the complaint and was not filed until after the case had been assigned to this Court's docket. The complaint was therefore invalid at filing, and the practice of deferring disclosure of the identification and number of defendants until after the case has been assigned gives rise to concerns regarding forum shopping and undermines the integrity of the Court's random case assignment process.").

the Amended Complaint and the Default Motion do not include a certificate of service, the Court granted Plaintiff the right to effect service by email. Dkt. 12. In conversations between Plaintiff's counsel and Storefront's counsel, Plaintiff's counsel represented that he had served each of the Storefronts by email. *See* Ex. J ¶ 6-7. As set forth in more detail in the attached declarations, none of the Storefronts Tomorrowhome, Outletestore, Seacoolr, Anderlink and Bestgeeker ever received any such notice. *See* Exs. A ¶ 7-8, B ¶ 7-8, C ¶ 7-8, D ¶ 7-8 and E ¶ 7-8. The email boxes for Tomorrowhome and Outletestore for their respective stores were entirely full and had been full for many months, including prior to the filing of the Amended Complaint. *See* Exs. A ¶ 7-8, B ¶ 7-8. Any emails Plaintiff may have sent would not have gone through to Tomorrowhome's and Outletestore's email boxes and would ultimately "bounce back" to the sender. Indeed, upon checking, Plaintiff's counsel confirmed that he had received bounce back notices for at least the emails regarding the Summons and Complaint sent to Tomorrowhome and Outletestore. *See* Ex. J ¶ 9. Seacoolr, Anderlink and Bestgeeker each found that they had received an email from Plaintiff on November 20, 2020, indicating that Plaintiff was filing a Motion for Default. However, none of the three stores had prior knowledge or notice of the case before to this email. Even though the email that each of Seacoolr, Anderlink and Bestgeeker received was dated November 20, 2020, none of these storefronts received notice of the summons or the Complaint from Plaintiff. Regardless of whether Plaintiff knew or had reason to know of the email bounce back at the time of service of the Complaint and/or Default Motion, the fact is that none of Tomorrowhome, Outletestore, Seacoolr, Anderlink and Bestgeeker received actual notice of the Complaint. Without notice, these Storefronts were deprived of any opportunity to mount a defense or challenge Plaintiff's Default Motion.

Despite never having served Tomorrowhome, Outletestore, Seacoolr, Anderlink or Bestgeeker with notice of the lawsuit, Plaintiff nonetheless withdrew $200,000 from Tomorrowhome's and Seacoolr's PayPal account[3] and $23,291.93 from Outletestore's PayPal account. *See* Exs. A ¶ 9, B ¶ 9, and C ¶ 9. Learning of these unauthorized withdrawals was the first notice each of these Storefronts had of the suit and the default proceeding. *Id*. ¶ 9. Likewise, Anderlink received a hold on its PayPal account for $36,052.42 and Bestgeeker received a hold on its PayPal account for $31,098.85. Despite acknowledging that Tomorrowhome and Outletestore did not receive any notice of the suit, Plaintiff has refused to voluntarily agree to set aside the default judgment and return the $223,291.93 in proceeds withdrawn from these two PayPal accounts. *See* Ex. J ¶ 7-10. Instead, Plaintiff is seeking to leverage its wrongful seizure of these funds, plus the freezes on the other Storefront accounts, to attempt to force an unfair and unreasonable settlement on all the Storefronts. *See* Ex. J ¶ 13.

## B. Language Barriers Precluded Understanding That a Lawsuit Had Been Filed

Upon investigation, the remaining Storefronts found that the summons and complaint were sent to the email addresses associated with their stores, but due to language barriers, the urgency and import of the English language legalese-laden emails received were not recognized. Although they would have received the Summons and Complaint and Motion for Entry of a Default Judgment, they were not aware of the meaning of the emails and the proceedings, until after their financial accounts were restrained. *See* Exs. F ¶ 7-8, G ¶ 7-8, H ¶ 7-8 and I ¶ 7-8. Only after the Storefront's PayPal accounts were frozen or money's withdrawn without permission did the

---

[3] In certain cases, two or more Storefronts shared the same PayPal email account address. In cases where the amount taken was from a PayPal account associated with more than one storefront, it is impossible to determine the individual amount each storefront lost. Rather, the total funds taken or held from each PayPal account is what is reported herein.

Storefronts eventually locate the Summons and Complaint and Default Motion, in February or March, 2021. *See* Exs. F ¶ 7, G ¶ 7, H ¶ 7 and I ¶ 7. While perhaps a better practice would be to more routinely monitor the email boxes for English language correspondence, in the normal course of the Storefront's business, these email boxes would receive mostly Chinese language correspondence, so that was always prioritized. *See* Exs. F ¶ 7, G ¶ 7, H ¶ 7 and I ¶ 7. The Storefronts certainly had no reason to monitor their email boxes looking for notice of a lawsuit from an alleged rights holder suing in the state of Illinois. The failure to immediately understand that a lawsuit across the world had been filed against them amounts to "mistake, inadvertence, surprise, or excusable neglect" as required by Rule 60(b)(1). Had Storefronts been aware of the suit, they would have promptly responded, as they have meritorious defenses. *See* Exs. F ¶ 6, G ¶ 6, H ¶ 6 and I at 6.

### C.   Storefronts Have Acted Reasonably and Promptly In Seeking To Set Aside The Default Judgments

Once the Storefronts realized they had been sued by Plaintiff, they promptly retained United States counsel to attempt to negotiate a resolution, appear in this case, and as a last resort – file this motion. Counsel for the Storefronts, Mr. Mark Fang, promptly contacted Plaintiff's counsel to try to resolve the case. *See* Ex. J ¶ 6. Acting on behalf of each of the Storefronts, he promptly took steps to engage with opposing counsel to try to resolve the underlying issues of this case. *Id*. ¶ 6-9. This includes email correspondence on December 31, 2020, February 23, 2021, March 2, 2021 and March 5, 2021 as well as phone calls on February 26, 2021, March 23, 2021, and April 14, 2021. *See id*.  6-13.

Mr. Fang asked Plaintiff's counsel to set aside the default judgment against Tomorrowhome and return the $200,000 that Plaintiff's counsel acknowledged was seized from Tomorrowhome's PayPal account despite it having no notice of the suit. *Id*. ¶ 6-11. Plaintiff has

refused, using that money as leverage against the other Storefronts. *Id.* ¶ 11, 13. In addition, as set forth below, Plaintiff has seized or frozen hundreds of thousands of dollars in the other Storefronts' accounts, rendering it virtually impossible for them to carry on their businesses. *See* Ex. A ¶ 9, B ¶ 9, C ¶ 9, D ¶ 8, E ¶ 8, F ¶ 8, G ¶ 8, H ¶ 8, I ¶ 8 and J ¶ 5-7. Only when counsel's attempts to resolve the matter met an impasse did Storefronts resort to bringing this motion.

## II. DEFENDANT STOREFRONTS HAVE MERITORIOUS DEFENSES AND SHOULD BE ALLOWED THE OPPORTUNITY TO PRESENT THE SAME

### A. Plaintiff Failed To Establish Jurisdiction Under The Lanham Act Or Its *De Minimus* Requirement As The Storefronts Made No Sales In The State Of Illinois.

"The plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). "When a statute gives no clear indication of an extraterritorial application, it has none." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010). "State laws [of Illinois] too . . . presumptively lack extraterritorial reach." *Hirst v. Skywest, Inc.*, 15 C 02036, 2016 WL 2986978, at *8 (N.D. Ill. May 24, 2016) (quoting *Morrison*, 561 U.S. at 255) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184-85 (2005) ("[T]he long-standing rule of construction in Illinois [ ] holds that a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute[.]) (internal quotation omitted)).

There are three factors to consider when determining whether the Lanham Act should be applied to extraterritorial conduct: (1) whether the defendant is a United States citizen; (2) whether there exists a conflict between the defendant's trademark rights under foreign law and the plaintiff's trademark rights under domestic law; and (3) whether the defendant's conduct has a substantial effect on United States commerce. V*anity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 642 (2d Cir. 1956). Using the *Vanity Fair* analysis, the court in *Juicy Couture, Inc. v. Bella Int'l, Ltd.* held

that maintaining a website accessible in the United States and making a *de minimis* amount of online sales to U.S. consumers does <u>not</u> justify the imposition of the Lanham Act. 930 F. Supp. 2d 489, 505 (S.D.N.Y. 2013). A *de minimis* amount of sales does not establish a likelihood of consumer confusion. *Ty, Inc. v. Jones Grp., Inc.*, 98 F. Supp. 2d 988, 1001 (N.D. Ill. 2000) citing *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 729 (7th Cir. 1998).

Even if the Court were to entertain the notion that the Lanham Act could create personal jurisdiction over Storefronts, that finding fails under the holdings of both *Vanity Fair* and *Juicy Couture*. These storefronts did not make any sales of accused products in Illinois. *See* Exs. A ¶ 6, B ¶ 6, C ¶ 6, D ¶ 6, E ¶ 6, F ¶ 6, G ¶ 6, H ¶ 6. Certainly, zero sales of accused product into Illinois does not satisfy the substantial effect requirement. Although neither *Vanity Fair* or *Juicy Couture* are controlling in this Court, the rationale of these courts are persuasive. Following the holding of the court in *Juicy Couture*, it is clear that Plaintiff's justification for the Lanham Act being the basis of jurisdiction is insufficient. As such, the Court cannot use the Lanham Act and, by extension the Illinois Uniform Deceptive Trade Practices Act, to establish jurisdiction over Storefronts.

### B.     Plaintiff Has Failed to Present Any Evidence of Infringement.

Furthermore, Plaintiff has presented no evidence of infringement. The only "evidence" of trademark infringement Plaintiff has submitted in this case was presented in the motion for temporary restraining order. Dkt. 8. In that motion, Plaintiff only presented four pages of "evidence," none of which was applicable to any of the Storefronts. *See* Dkt. 8-10 and 8-11; Exs. A ¶ 1-10, B ¶ 1-10, C ¶ 1-11, D ¶ 1-11, E ¶ 1-11, F ¶ 1-9, G ¶ 1-9, H ¶ 1-9 and I ¶ 1-9. Plaintiff represented to the Court that additional "evidence" would be presented to the Court in connection with the Motion to Seal, but none was ever submitted. *See* Dkt. 6, 8-8, 8-9.

Plaintiff asserts that Storefronts are subject to this Court's jurisdiction because they regularly conducted business, solicited business and/or derived substantial revenue from goods and services provided to individuals in Illinois. Dkt. 7 at ¶ 3. Plaintiff has presented no evidence of any business conducted in the State of Illinois by Storefronts, or derived any revenue from Illinois residents. Further, Plaintiff has presented no evidence that Storefronts sold allegedly infringing products in the United States and in Illinois. *See* Dkt. 8-11. As Plaintiff has failed to provide any evidence of any allege conduct by any of Storefronts that might have the required degree of effect on either United States or Illinois commerce, the Lanham Act and the IDTPA cannot reach Defendant extraterritorially.

### C. Storefronts Did Not Receive Proper Notice And Are Therefore Eligible To Assert That Lack Of Notice As A Meritorious Defense.

The plaintiff bears the burden of establishing that the district court has jurisdiction over each defendant through effective service. *Cardenas v. City of Chicago*, 646 F.3d 1001, 1004-05 (7th Cir. 2011). Only proper service of the complaint and summons in accordance with Fed. R. Civ. P. 4 vests the district court with jurisdiction over a defendant. *Id.*; Fed. R. Civ. P. 4 (b), 4(c)(1). Actual knowledge of the existence of a lawsuit is "insufficient to confer personal jurisdiction" absent valid service of process. *Mid-Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991).

Storefronts are corporations organized and existing under the laws of the People's Republic of China and headquartered in China, which requires service in accordance with the Hague Service Convention. *See* Exs. A ¶ 1, B ¶ 1, C ¶ 1, D ¶ 1, E ¶ 1, F ¶ 1, G ¶ 1, H ¶ 1 and I ¶ 1. Plaintiff bypassed the service of process procedures required by the Hague Convention and improperly served Storefronts by email. As such, even if Storefronts had received notice via email, this notice would not have been sufficient, as the Convention prohibits this method of service. *Luxottica*

*Group S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A,"* 391 F.

Supp. 3d 816, 821-24 (N.D. Ill. 2019).

### D. Plaintiff Cannot Establish That Either The Hague Convention Or Fed. R. Civ. P. 4(F) Permits Service By Email.

The Hague Service Convention is a multilateral treaty intended to simplify, standardize,

and generally improve the process of serving documents abroad. *Water Splash Inc. v. Menon*, 137

S. Ct. 1504, 1507 (2017). The "primary innovation" of the treaty is that it "requires each state to

establish a central authority to receive requests for service of documents from other countries"

under Articles 2-7. *Water Splash*, 137 S. Ct. at 1508, quoting *Volkswagenwerk Aktiengesellschaft*

*v. Schlunk*, 486 U.S. 694, 705 (1988). The Convention also permits certain other limited forms of

service outside of the central authority: diplomatic and consular agents (Articles 8-9), mail or

through a judicial official of the State of destination if the destination State does not object (Article

10), methods allowed by other applicable international agreement (Article 11), and other means as

allowed by the internal laws of the destination State (Article 19). *Water Splash*, 137 S. Ct. at 1508.

The Convention has the force of federal law, and limits available methods of service under Rule

4(f)(3). *Id*. Indeed, by virtue of the Supremacy Clause of the Constitution, the Convention

"specifies certain approved methods of service and 'pre-empts inconsistent methods of service'

wherever it applies." *Id*., quoting *Schlunk*, 486 U.S. 705.

Proper service on an individual in a member foreign country, as outlined in Fed. R. Civ. P.

4(f), is subject to the Hague Convention. Both the United States and China are members of the

Hague Convention. The Convention does not support the notion that email service is permitted.

Under Article 10(a) of the Convention, "[p]rovided the State of destination does not object, the

present Convention shall not interfere with…the freedom to send judicial documents, by postal

channels, directly to persons abroad." 20 U.S.T. at 361. It is also well established that China formally objects to all methods of service identified under Article 10.[4]

In *Schlunk*, the Supreme Court held that "compliance with the Convention is mandatory in all cases to which it applies." 486 U.S. at 75. In *Water Splash*, the Supreme Court held that the Hague Convention "specifies certain approved methods of service and 'pre-empts inconsistent methods of service.'" 137 S. Ct. at 1508. Email service is inconsistent with the Hague Convention's methods of service. *See also Luxottica Group S.p.A.*, 391 F. Supp. 3d at 821-24 (Judge Gottschall) (finding email service on Chinese defendant to be contrary to Hague Convention). Furthermore, Article 19 of the Convention also does not permit service by email. That Article provides that "to the extent the internal law of a contracting state permits methods of transmission, other than those provided in the preceding Articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions." Additionally, Article 277 of the Convention states: "no foreign authority or individual shall, without permission from the competent authorities of the People's Republic of China, serve process or conduct investigation and collection of evidence within the territory of the People's Republic of China." *Sun Group U.S.A. v. CRRC Corp.*, 2019 U.S. Dist. LEXIS 200616, *3-4 (N.D. Ca. 2019). Accordingly, there is no relevant authority finding that the Convention permits email service, and Plaintiff has failed to sustain its burden to establish jurisdiction over Storefronts.

---

[4] *See* Official Website of the Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn (reprinting China's formal opposition to "the service of documents in the territory of the People's Republic of China by the methods provided by Article 10 of the Convention") (last visited June 15, 2020).

## **CONCLUSION**

Therefore, for the reasons set forth above, Storefronts respectfully request the Court to grant the motion and set aside the Default Judgment against each of them, and set a schedule for each of the Storefronts to answer or otherwise respond to the Amended Complaint.

Dated: May 26, 2021

Respectfully submitted,

TOMORROWHOME, OUTLETESTORE, ANDERLINK, SEACOOLR, BESTGEEKER, FANSFUNY, NATIVISH, ROWACTION, and USBKITS, Defendants

By: HINSHAW & CULBERTSON LLP

/s/ *Mark K. Suri*
Mark K. Suri

Mark K. Suri
Hinshaw & Culbertson LLP
151 North Franklin Street
Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001
msuri@hinshawlaw.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on May 26, 2021, I electronically filed the forgoing **MOTION TO SET ASIDE DEFAULT JUDGMENT** with the Clerk of the U.S. District Court, using the Court's CM/ECF system, which will accomplish service electronically on all counsel of record.

*/s/Mark K Suri*
Mark K. Suri